UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PASTOR PARAFAN-HOMEN,

                        Petitioner,                           **03-CV-5427 (TCP)**

                                                              **MEMORANDUM**
        - against -                                           **AND ORDER**


UNITED STATES OF AMERICA,

                        Respondent.
------------------------------------------------------------X
PLATT, District Judge.

        Before the Court is Pastor Parafan-Homen's ("petitioner") petition brought pursuant to 28

U.S.C. § 2255 to vacate, set aside or correct his sentence.  Also before the Court is petitioner's

motion, brought subsequent to the filing of his petition, seeking entry of a default judgment and

summary judgment or, in the alternative, an evidentiary hearing.

        Petitioner's 28 U.S.C. § 2255 petition is hereby **DENIED** for the reasons stated below.

Petitioner's motion for a default or summary judgment is hereby **DENIED**.  Petitioner's request

for an evidentiary hearing is also **DENIED**.

## I.  BACKGROUND

**A.      Facts**

        Through an extensive investigation, federal and state law enforcement officials from New

York, New Jersey, California and Texas uncovered a Columbian based cocaine distribution

conspiracy.[1]  Between 1988 and June 1994, approximately *thirty (30) tons of cocaine* were

transported from Columbia into the United States via Mexico by a distribution network known as

---

1.  The facts are taken from petitioner's presentence report dated June 2, 2000, the Judgment dated May 1, 2001,
petitioner's papers in support of his motion and the government's opposition papers.

"The Company." The Company was controlled by petitioner and an executive board composed of petitioner's unindicted co-conspirators.

On April 23, 1997, a federal grand jury sitting in the Eastern District of New York returned a true bill on a sealed indictment. The eight count indictment remained under seal until petitioner, a Columbian citizen, was arrested in Venezuela on a provisional arrest warrant and extradited to the Eastern District of New York. Petitioner was charged with: (1) violation of 21 U.S.C. § 848(a) for engaging in a continuing criminal enterprise ("CCE"); (2) conspiracy to import cocaine into the United States in violation of 21 U.S.C. §§ 963 and 960(b)(1); (3) violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) for conspiracy to distribute and possess with intent to distribute cocaine; and (4) five counts of violation of 21 U.S.C. §§ 841( a)(1) and 841(b)(1)(A) for distribution and possession with intent to distribute cocaine.

Upon receiving notice that the United States government sought extradition, petitioner retained attorneys Richard Canton and David Zapp, who traveled to Venezuela to fight the extradition proceedings. After the Venezuelan Supreme Court ratified petitioner's extradition to the United States in May 1997, petitioner continued to retain Messrs. Zapp and Canton and, in October 1997, petitioner retained attorney Ivan Fisher.

Well before trial, however, and after the government advised the defense and the Court about a potential conflict arising from Zapp's prior representation of the government's witness, Zapp withdrew from representing petitioner.

Petitioner's jury trial started on March 16, 1998. On June 19, 1998, petitioner was found guilty by jury verdict on each and every count of the eight count indictment. Petitioner then moved for a new trial claiming ineffective assistance of counsel on the ground that his chosen

attorney, Mr. Fisher, prevented him from testifying at trial. The Court granted petitioner a hearing on the sole issue of whether Mr. Fisher's counsel was rendered ineffective by preventing petitioner from testifying at his trial.

The undersigned recused himself from the hearing and Federal District Court Judge Leonard D. Wexler was randomly chosen to conduct the hearing, which took place on September 8 and 9, 1999. Petitioner was represented by attorneys Joseph Bondy and Martin Schmukler. Attorneys Fisher and Canton testified at the hearing as did Mr. Fisher's paralegal, Carmen Espinal. Mr. Canton's associate, Frank Hernandez, also testified.

On December 22, 1999, Judge Wexler issued findings of fact and conclusions of law in which he found that petitioner failed to prove that Mr. Fisher prevented him from testifying at trial and that he did not prove that Mr. Fisher rendered ineffective counsel assistance. The case was then returned to the undersigned.

In its Memorandum and Order dated January 18, 2000, this Court considered the remaining issues in petitioner's motion for a new trial. In denying petitioner's motion, the Court held:

> These contentions, in short, request the Court to find that Mr. Fisher's strategies or tactical recommendations and decisions on how to try the case were "ineffective" acts of counsel and, of course do not measure up to either or both prongs of the test prescribed by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).

> The fact of the matter is, as we have heretofore pointed out in our Memorandum and Order dated November 16, 1998 (at pp. 7 and 8), that defense counsel successfully precluded the Government from presenting to the jury on its direct case and in persuading defendant not to testify in the whole case, proof of:

> (i) the content of, and the Government's possession of, numerous audio tapes from Costa Rica with defendant on the phone

conversing with people who had been convicted of trying to establish a cocaine laboratory in Costa Rica;

(ii)　The charges pending against the defendant in Columbia at the time of the trial; and

(iii)　Defendant's arrest in 1982 in connection with hundreds of kilograms of cocaine that were concealed in a boat in one of the harbors in Panama.

The proof of any one or more or all of those facts would have been, to put it mildly, devastating to the defendant's case.

The alternative course of "opting instead to put on a reasonable doubt case" was in simple terms[:] good, not bad, lawyering.

On March 16, 2001, the Court conducted a hearing to determine whether agreements relevant to petitioner's sentence had been made with the Venezuelan government prior to his extradition. Approximately five weeks later, on April 27, 2001, the Court sentenced petitioner to 360 months imprisonment on the first count, which accused petitioner of running a continuing criminal enterprise; 240 months on count two for conspiracy to import cocaine into the United States, which was to run concurrently with count one; 240 months on counts four, six and eight for distribution and possession with intent to distribute cocaine, all to run concurrently with counts one and two; 240 months on counts five and seven for distribution and possession with intent to distribute cocaine, to run concurrent with each other, but to run consecutively to the extent needed to equal the 360 months imposed on the CCE sentence. The Court dismissed count three charging conspiracy to distribute and possess with intent to distribute cocaine, upon the government's motion and upon finding that the count was a lesser included offense of the CCE charged as count one in the indictment.

On October 12, 2001, the Second Circuit Court of Appeals appointed attorney Bondy,

pursuant to the Criminal Justice Act, to represent petitioner on appeal. On December 4, 2001, Mr. Bondy filed a direct appeal on behalf of petitioner which: (1) renewed his previous claim of ineffective assistance of counsel by attorney Ivan Fisher; (2) alleged an abuse of discretion by the Court in not allowing petitioner to testify after the jury had been charged but before deliberations began; (3) challenged the imposed sentence based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and other grounds; (4) challenged the Court's handling of the jury notes at trial; and (5) challenged the Court's handling of petitioner's allegations of improper conduct by jurors.

On April 22, 2002, the Second Circuit affirmed petitioner's conviction and sentence by summary order in an unpublished opinion. On August 15, 2002, appellate attorney Bondy filed a notice of the filing of a writ of certiorari to the United States Supreme Court, which writ was denied on October 7, 2002. On October 15, 2002, a certified copy of the Supreme Court's Order denying the petition for a writ of certiorari was filed in the Second Circuit.

Petitioner placed the motion to vacate his sentence in the prison's legal mail depository on October 5, 2003.

On October 5, 2006, petitioner filed a subsequent motion for summary default and/or summary judgment pursuant to Federal Rules of Civil Procedure 55(d)[2] and 56(a). In the alternative, petitioner requests an evidentiary hearing.

With respect to his request for a default judgment, the basis of petitioner's claim is that the government asked for and was granted numerous extensions of time to respond to petitioner's

---

2. Petitioner originally made this motion pursuant to Federal Rule of Civil Procedure 55(e), which subsequently became Rule 55(d). The rule is substantively the same. It provides that an individual may procure a default judgment against the United States, its officers or its agencies only if the claim or right to relief is proven to a court's satisfaction.

28 U.S.C. § 2255 petition. He contends, therefore, that the United States defaulted on its opportunity to address and defend the allegations raised in his petition by failing to file an answer and show cause why petitioner's habeas request should not be granted as this Court's November 14, 2003 Order directs.

**B.     Petitioner's Requests for Relief**

By his 28 U.S.C. § 2255 motion, petitioner claims that his various attorneys rendered ineffective assistance of counsel during the pretrial proceedings, throughout the plea bargaining process, during trial, post-trial, at sentencing and on appeal. Petitioner also requests an evidentiary hearing.

Additionally, petitioner moves for summary default and/or summary judgment pursuant to Federal Rules of Civil Procedure 55(d) and 56(a) on the grounds that the government failed to respond to his habeas petition in conformance with the Court's Order dated November 14, 2003.

## II.   DISCUSSION

**A.     Legal Standard for Ineffective Assistance of Counsel Claims**

In pertinent part, the Sixth Amendment of the United States Constitution provides that the accused has the right to the assistance of counsel for his or her defense. "The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012).

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, when a convicted defendant complains of the ineffectiveness of counsel's assistance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

The two part test governing an ineffective counsel claim requires a defendant to

demonstrate: (1) that counsel's performance was objectively deficient; and (2) the deficiency so prejudiced the defense that but for counsel's deficiency, the outcome of the case would have been different. *Id.* "To establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2255 (2010) (quoting *Strickland*, 466 U.S. at 694). In determining whether counsel's conduct prejudiced a defendant, a court must consider " 'the totality of the evidence before the judge or jury.' " *Id.* (quoting *Strickland*, 466 U.S. at 695). "In assessing performance, we must apply a 'heavy measure of deference to counsel's judgments.' " *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691).

Where a petitioner fails to demonstrate that his attorney's conduct was either objectively unreasonable or prejudicial, the court need not consider the alternate *Strickland* prong. *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005). *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**B**. **Petitioner's 28 U.S.C. § 2255 Motion**

  **1.** **Timeliness of Petitioner's Habeas Petition**

As an initial matter, the Court's November 14, 2003 Order directed the government to brief the issue of whether petitioner's motion was time-barred given petitioner's failure to mail the motion to the correct address in a timely fashion.

Although the government's research did not reveal a case exactly on point, its review of the existing case law demonstrates that a pro se prisoner's filing is timely if it is given to the authorities for mailing within the limitations period. *See Houston v. Lack*, 487 U.S. 266, 270

(1988) (holding that "petitioner thus filed his notice within the requisite 30-day period when, three days before the deadline, he delivered the notice to prison authorities for forwarding to the District Court"). The Second Circuit Court of Appeals has also adopted the "prison mailbox rule." *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) (noting that *Houston v. Lack* concerned the filing of a notice of appeal and concluding "that the district court properly extended the prison mailbox rule to petitions for writs of habeas corpus").

Title 28 U.S.C. § 2255(f)(1) provides for a one year limitations period to bring a habeas corpus petition, which begins to run on the date the judgment of conviction becomes final. As the government points out, petitioner's conviction became final on October 7, 2002 when the Supreme Court denied his petition for certiorari. The petition contains a "Mail Certification" executed by the "Unit Officer for Unit B-4" which certifies that petitioner placed his § 2255 petition in the institution's legal mail system on October 5, 2003, i.e., approximately two days before the statutory limitations period ended. Accordingly, under the prisoner mailbox rule, petitioner's habeas petition was timely mailed despite the fact that it was addressed incorrectly.

### 2.    Ineffective Assistance of Counsel During Pretrial Proceedings

Petitioner alleges fourteen grounds in support of his claim that he received ineffective assistance of counsel during the pretrial proceedings.[3] Of those fourteen grounds, grounds one through six are based on petitioner's claim that the indictment is null and void and that his attorneys were ineffective for failing to challenge its legality.

---

3. As set forth in petitioner's preliminary statement, petitioner identifies the attorneys by either their specific names, as "defense counsels" or as "defense counsel." He also states that notwithstanding the "alternating identification of the attorneys[,] the identity of one is the identity of all" and that in claiming that his various attorneys were ineffective, petitioner is implicitly alleging the same claim against all attorneys.

With respect to grounds one through six, petitioner argues that the indictment was null and void because petitioner was not named in the indictment bearing case number 95-CR-721, but was instead named in the indictment bearing case number 95-CR-722. He alleges that his indictment was returned by the grand jury some twenty months later and is, therefore, a fraud upon the Court perpetuated by the government thereby rendering the indictment null and void. Mem. in Supp. at p. 21. His attorney's failure to move to dismiss on this ground, therefore, amounted to ineffective assistance of counsel.

Petitioner further alleges that counsel was ineffective for not filing a motion to dismiss the null and void fictitious indictment because: (1) it was not returned by a grand jury; (2) the United States Attorney who signed the indictment for case number 95-CR-721 did not sign indictment 95-CR-722, which was used as the sole basis to extradite petitioner; (3) the grand jury foreperson, Mary Cardano, did not sign the indictment for 95-CR-722 and her signature was instead forged by the government; (4) the indictment was not returned in open court as required by Federal Rule of Criminal Procedure 6(f); (5) assuming *arguendo* that the indictment was valid, the grand jury that returned the indictment would have been impaneled in excess of eighteen months in violation of Federal Rule of Criminal Procedure 6(g); and (6) petitioner was extradited based on the null indictment which should have been brought to the Court's immediate attention. Mem. in Supp. at pp. 22-23.

With respect to the allegations concerning the indictment in petitioner's case, the record shows otherwise. The grand jury handed down sealed indictments in cases 95-CR-721 and 95-CR-722 on August 15, 1995, as indicated by the cases' respective dockets. On April 23, 1997, an amended order directing the unsealing of the indictment from case number 95-CR-722 was

entered.  The Eastern District's practice at the relevant time was to date stamp a sealed

indictment on the day on which it was unsealed.  Thus, the indictment from petitioner's case was

not returned by the grand jury twenty months after it returned the indictment in case 95-CR-721

but was instead returned the same day.  Accordingly, petitioner's attorneys could not move to

dismiss on this ground and were objectively reasonable in not so moving.

Nor does the fact that then United States Attorney Zachary Carter did not sign the

indictment in petitioner's case render it null and void.  As the government points out, the United

States Attorney is legally required to sign all indictments handed up by grand juries in the

Eastern District of New York unless he or she designates that function to another United States

Attorney.  Here, Acting Assistant United States Attorney William Mueller rightfully signed the

indictment against petitioner in attorney Carter's stead.

With respect to petitioner's claim that grand jury foreperson Mary Cardano's name was

forged on his indictment, a comparison of Mary Cardano's signatures on the two indictments

reveals that the signatures appear to have been made by the same person.  Furthermore, petitioner

offers no evidence that anyone besides Mary Cardano signed his indictment.

Pursuant to Federal Rule of Criminal Procedure 6(f), the "grand jury–or its foreperson or

deputy foreperson–must return the indictment to a magistrate judge in open court."  With regard

to petitioner's claim that the indictment was not returned in open court, a sealed grand jury

document located in the Clerk's vault shows that on August 15, 1995, the grand jury presented

two sealed indictments bearing case numbers 95-CR-721 and 95-CR-722 to Magistrate Judge

Viktor Pohorelsky.  A second document entitled "Record of Grand Jurors concurring" states that

on the "15th day of August, A.D.19" eighteen grand jurors concurred in finding the aforesaid

indictments.  Accordingly, the indictment naming petitioner was returned to a magistrate judge in open court as required by the rule and petitioner's counsel was not ineffective for failing to file a motion to dismiss on this ground.

Pursuant to Federal Rule of Criminal Procedure 6(g), a "grand jury must serve until the court discharges it, but it may serve more than 18 months only if the court, having determined that an extension is in the public interest, extends the grand jury's service."  Given that the indictments were returned on the same day, and not twenty months apart as petitioner alleges, the grand jury in this case did not violate Rule 6(g).  Consequently, petitioner's counsel was not unreasonable in not moving to dismiss on this ground.

Petitioner also alleges that his extradition based on the purportedly null indictment should have been brought to the Court's immediate attention by his attorneys.  Having found, however, that the indictment is valid, petitioner's attorneys were not required to raise this issue.  Consequently, petitioner's attorneys were not ineffective for failing to file a motion to dismiss with respect to the six pre-trial grounds named above.

As his seventh ground, petitioner contends that counsel was ineffective for failing to file a pretrial motion to dismiss based on witness William Quintero's perjured testimony before the grand jury.  Mem. in Supp. at p. 24.  Quintero's perjury in the grand jury consisted of his failure to disclose the full time period and scope of his involvement with petitioner and with illegal drug trafficking in general.  Mem. in Opp. at p. 10.

 A jury conviction, however, "transforms any defect connected with the grand jury's charging decision into harmless error, because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt."  *Dickens v. Filion*, No. 02 Civ 3450,

2002 WL 31477701, at *11 (S.D.N.Y. Nov. 6, 2002). *See United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("We believe that the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). Consequently, this ground fails on *Strickland's* prejudice prong because even assuming counsel was deficient in seeking to dismiss the indictment, petitioner was not prejudiced by that failure since the jury found him guilty beyond a reasonable doubt.

As his eighth ground claiming ineffective assistance of counsel during pre-trial proceedings, petitioner argues that his attorneys failed to seek dismissal of the CCE violation charged in count one. Petitioner contends that the indictment erroneously incorporated the conspiracy to import cocaine alleged in count two and the conspiracy to possess cocaine alleged in count three as predicate offenses of the CCE. Mem. in Supp. at p. 25. According to petitioner, the conspiracy offense is a lesser-included charge and cannot serve as an underlying predicate offense. *Id.* As a ninth ground, petitioner claims that counsel's failure to move to dismiss counts two and three was improper because the conspiracies charged therein were lesser included offenses of count one. *Id.*

As noted by the government's letter dated April 6, 2001 which was sent in response to petitioner's attorney Bondy's arguments regarding petitioner's sentencing, the government planned to move to dismiss count three, the distribution conspiracy, based on *United States v. Rutledge*, 517 U.S. 292, 301 (1996). That case held that conspiracy to distribute a controlled substance is a lesser included offense of engaging in a CCE. *Id.* The Judgment in petitioner's case reflects that count three, conspiracy to distribute and possess with intent to distribute

cocaine, was dismissed on motion of the government.

Count two, however, involved conspiracy to *import* cocaine into the United States and is not a lesser included offense of the CCE violation. Furthermore, the importation charge in count two and the distribution charges in counts four through eight form the proper predicates for the CCE charge. Thus, petitioner's arguments are incorrect insofar as he contends that conspiracy to import cocaine is a lesser included offense and that his attorneys should have moved to dismiss counts two and three as lesser included offenses of the CCE. Accordingly, counsel's conduct was not objectively unreasonable.

As to ground ten, petitioner contends that his attorneys were ineffective for failing to move to continue the trial after it became apparent that the admissibility of certain evidence, the Costa Rican tapes,[4] was in question.

According to the facts stated by petitioner in his moving papers, his defense team opposed the introduction of the Costa Rican tapes into evidence as irrelevant, unreliable, and inadmissible under Federal Rule of Evidence 404(b).[5] Eventually the defense moved to preclude the tapes as resulting from an illegal wiretap. Petitioner now complains that the Court did not determine whether or not the tapes were illegal prior to jury selection and that counsel failed to move for a continuance. Consequently, petitioner argues, counsel had no idea what defense he would present at the opening of trial. Mem. in Supp. at p. 25.

Petitioner's statement that his attorneys did not know what defense they would present at

---

4. According to petitioner's papers, pre-trial discovery supplied to the defense by the government included a series of telephone tape recordings made in 1986 containing petitioner's voice and concerning a Costa Rican cocaine processing laboratory. Mem. in Supp. at p. 11.

5. Federal Rule of Evidence 404(b) sets forth the circumstances under which evidence of a crime, wrong or other act is prohibited or permitted.

the time the jury was selected does not demonstrate that he was prejudiced by his attorneys' decision not to move for a continuance. In the first instance, his statement as to what the attorneys thought is completely unsubstantiated. Furthermore, there is no evidence on this record that the jurors' guilty verdict would have been different if the suppression motion was decided before the jury was selected. Rather, as this Court has already held, the attorneys opted to put on a "reasonable doubt" case and, thus, there is no basis to believe that they had no defense planned with or without the tapes. As a result, counsel's failure to move for a continuance did not prejudice petitioner.

As his eleventh ground, petitioner claims that counsel was ineffective for failing to file a pre-trial motion to dismiss based on improper venue and lack of personal jurisdiction. He contends that the alleged conduct underlying the indictment with regard to counts four through eight took place in New Jersey, not in New York, and, as a result, venue is improper. He also contends that this Court lacks jurisdiction over him because he was not in the United States during the time frame charged in the indictment. Mem. in Supp. at p. 26.

Pursuant to the United States Constitution, "[t]he Trial of all Crimes . . . shall be held in the State where said Crimes shall have been committed." Art. III, , § 2, cl. 3. The Sixth Amendment guarantees trial "by an impartial jury of the State and district wherein the crime shall have been committed." "It thus appears settled that proper venue in a criminal case is determined by the locus of the offense." *United States v. Chestnut*, 533 F.2d 40, 46 (2d Cir. 1976) (citing cases).

As the government points out, the trial evidence clearly established that substantial illegal conduct occurred within the Eastern District of New York, including the seizure of a tractor-

-14-

trailer filled with cocaine in Long Island, New York and the use of "stash houses" to hide money resulting from cocaine trafficking and other acts. Mem. in Opp. at p. 11. Thus, venue was proper in the Eastern District of New York because it is the locus of the offense, which was necessarily proven to the jury beyond a reasonable doubt.

With regard to petitioner's jurisdiction argument, the "doctrine of specialty limits the authority of a domestic criminal court to charges 'specially brought to the attention' of the foreign government that has delivered a defendant pursuant to extradition." *United States v. Levy*, 947 F.2d 1032, 1034 (2d Cir. 1991) (quoting *Fiocconi v. Attorney General*, 462 F.2d 475, 478 (2d Cir. 1972)). Furthermore, the "doctrine limits the personal jurisdiction of the domestic court" to trying defendant for only those counts listed in the indictment used as the basis for extradition. *Id.* Thus, the doctrine inherently bestows the court with personal jurisdiction over an extradited criminal defendant like petitioner. In light of all of the foregoing, then, counsel's performance was not deficient because a motion to dismiss for either improper venue or lack of jurisdiction would have been fruitless and petitioner was not prejudiced.

Next, petitioner contends that counsel was ineffective for failing to file a motion to dismiss the indictment because it failed to allege all of the essential elements of a CCE charge, including those elements set forth in 21 U.S.C. § 848(c)(1) and (2)(A) and (B). Mem. in Supp. at p. 27.

Pursuant to 21 U.S.C. § 848(c), a "person is engaged in a continuing criminal enterprise" if "(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter–(A) which are undertaken by such person in concert

with five or more other persons with respect to whom such person occupies a position of

organizer, a supervisory position, or any other position of management, and (B) from which such

person obtains substantial income or resources."

At count one, petitioner's indictment alleges:

> In or about and between 1988 and June 1994, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PASTOR PARAFAN-HOMEN, also known as "The Big Boss," and others, did knowingly and intentionally engage in a continuing criminal enterprise in that they committed violations of Title 21, United States Code, Sections 841, 846, 952, 959, 960 and 963 involving an amount in excess of one thousand kilograms of cocaine, which violations were part of a continuing series of violations of said statutes undertaken by the defendant PASTOR PARAFAN-HOMEN, also known as "The Big Boss," in concert with five or more persons with respect to whom the defendant PASTOR PARAFAN-HOMEN, also known as "The Big Boss," occupied the position of organizer, supervisor and manager and from which continuing series of violations the defendant PASTOR PARAFAN-HOMEN, also known as "The Big Boss, obtained substantial income and resources.

Mem. in Supp. at Exh. B.

A plain reading of the indictment's criminal enterprise count alleges that petitioner

violated certain provisions of the Controlled Substance Act, that the violations were part of a

continuing series of violations undertaken by petitioner in concert with five or more persons,

with respect to whom petitioner occupied the position of organizer, supervisor or manager.  It

also alleges that petitioner obtained substantial income and resources from the activities.   The

jury found petitioner guilty beyond a reasonable doubt on count one.  Counts four through eight

of his indictment detail the substantive charges with respect to petitioner's distribution of and

possession with intent to distribute cocaine, i.e., the "continuing" series of violations.

Indictments are to be evaluated as a whole and not truncated into discrete sections.  *See United

States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999) (holding that an indictment must be read as a

whole).

Reading the indictment as a whole, it properly alleged all of the elements of a CCE set forth in 21 U.S.C. § 848(c)(1) and (2)(A) and (B) and, therefore, his attorneys were not ineffective by not moving to dismiss the indictment for failure to include the elements of that charge.

As his thirteenth ground, petitioner alleges that he was deceived by his attorneys and therefore unable to make a knowing and intelligent decision on whether or not to proceed to trial. Mem. in Supp. at p. 29. First, petitioner contends that he was deceived into believing that he would testify and that his attorney would present multiple defenses *prior* to the empanelment of a jury. He claims that had he known that he would be unable to testify or present defenses prior to trial, he "would have had no choice but to plead guilty." *Id.*

There is no option under our procedural rules for criminal cases to have what resembles a trial prior to an actual trial. Thus, petitioner was operating under a misconception. The misconception is, however, immaterial because petitioner did not plead guilty based on it and he was therefore not prejudiced.

Petitioner also contends that he was deceived into believing that his attorneys had secured multiple favorable witnesses to testify on his behalf and that a forensic accountant had been hired who would testify that petitioner's funds were derived from legitimate sources. Petitioner states that counsel had secured documentation during one of his trips to Columbia which proved that someone other than petitioner was the alleged "Big Boss." He claims that defense counsel composed a witness list, but never filed it with the Court or shared it with the government. Petitioner also claims that counsel had a "War Room" of discovery materials that were not

provided to the government. *Id.* at pp. 29-30.

The record does not contain any evidence of his claims and nor does petitioner cite to such evidence. With regard to the forensic accountant who was supposed to testify, petitioner presents his own affidavit detailing his businesses. Without concrete evidence such as the findings of a forensic accountant as well as documentation such as bank statements, profit and loss statements, receipts, etcetera, to support petitioner's claims that his businesses account for his wealth, his affidavit proves nothing. Moreover, the affidavit is not proof that his attorneys were ineffective or deceived him.

Furthermore and as the government points out, the defendant in a criminal case is never obliged to present a defense and there is no blanket requirement that the defense supply the government or the Court with a witness list or discovery. Nor does petitioner present any evidence of who these witnesses may have been or the subject matter of their testimony. Consequently, these are not grounds for an ineffective assistance of counsel claim.

Petitioner also alleges that counsel deceived him into believing that in the event he was found guilty at trial, he would not receive a sentence greater than twenty-one years under the Venezuelan Extradition Treaty.

By letter-memorandum dated November 3, 2000 and submitted in support of petitioner's application for a downward departure, attorney Bondy requested that petitioner be sentenced in accordance with Venezuelan law based on the extradition order from that country. After the government opposed Mr. Bondy's request on petitioner's behalf, by letter dated January 19, 2001, Mr. Bondy conceded that the extradition order did not limit sentencing to thirty years. He contended, however, that the decision of the Venezuelan Supreme Court, which granted

petitioner's extradition, limited sentencing to the thirty year maximum allowable in Venezuela. By letters dated February 20, 2001 and April 13, 2001, Mr. Bondy continued to advocate for a downward departure from thirty years on behalf of petitioner. Thus, while petitioner's attorney may have discussed with petitioner the possibility that he would receive less than thirty years, Mr. Bondy's correspondence with the Court demonstrates that he was well aware that petitioner could receive a thirty year sentence. Moreover, the letters indicate that petitioner was copied on his attorney's letters to the Court giving him actual notice of his potential sentence and his attorney's attempts to obtain a downward departure. Accordingly, petitioner may not claim ineffective assistance of counsel on these grounds and, moreover, counsel's conduct with regard to petitioner's sentencing was reasonable.

As his final ground alleging pretrial ineffective assistance of counsel, petitioner claims that attorney Canton's decision to bring in attorney Zapp as co-counsel and lead member of the defense team resulted in a conflict of interest. Attorney Zapp previously represented one of the government's witnesses in the case against petitioner.

As the government points out, however, Zapp withdrew from representing petitioner well before his trial and right after the government advised the Court and the defense team about the potential conflict. According to a Republic of Venezuela, Supreme Court Justice, Division of Criminal Review document located in petitioner's presentence folder maintained in the undersigned's Chambers, Venezuela granted the United States' request to extradite petitioner on May 22, 1997. Petitioner first appeared and was arraigned on May 27, 1997. The docket in petitioner's criminal case (95-CR-722) indicates that on September 24, 1997, Assistant United States Attorney Edgardo Ramos wrote to counsel to confirm his separate telephone calls "with

each of you wherein you agreed that, as a result of a possible conflict from Mr. Zapp's prior representation of a potential cooperating witness at the trial of this matter, Mr. Zapp will not serve as counsel to Mr. Parafan-Homen and will play no role whatsoever in the defense of Mr. Parafan-Homen." Case no. 95-CR-722 at DE 33. The docket from petitioner's criminal case indicates that attorney Zapp did not enter an appearance. Furthermore, the entries between petitioner's arraignment and the docket entry noting that Zapp would not represent petitioner concern the scheduling of motions, speedy trial waivers, a motion by the government to consolidate the case, objections and replies, a motion to modify petitioner's confinement and defense motions, all of which were made by or responded to by attorney Canton. Consequently, the docket offers no evidence of Zapp's purportedly extensive involvement in petitioner's case.

Accordingly, except for petitioner's unsupported supposition that his defense team never intended to present a defense because to do so would subject the attorneys to disqualification, there is no evidence that any potential conflict of interest rendered counsel's assistance ineffective or that he was prejudiced by Mr. Zapp's alleged involvement in his case.

### 3. Ineffective Assistance of Counsel at the Plea Bargaining Stage

Petitioner argues that his attorneys were ineffective for failing to: (1) review the sentencing guidelines and to advise him of the benefits of pleading guilty; (2) enter into plea negotiations with the government to secure a favorable plea limiting petitioner's sentence without his cooperation; (3) inform petitioner that he had the right to plead guilty in open court; (4) inform petitioner to enter a plea because counsel failed to provide the government reciprocal discovery to prepare an affirmative defense in violation of Federal Rule of Criminal Procedure 16; (5) negotiate a plea agreement once it became apparent the government would introduce the

Costa Rican tapes if petitioner took the stand or if he presented affirmative defenses; (6) advise petitioner to plead guilty once attorney Canton became aware that attorney Fisher was not going to present attorney Canton's defenses; and (7) advise petitioner to plead guilty during trial after the government presented its case.

"Plea bargaining is a critical stage of a criminal proceeding, during which the advice of counsel is important." *Brown v. Doe*, 2 F.3d 1236, 1246 (2d Cir. 1993). Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*. *Williams v. United States*, No. 07 Civ. 1804, 2012 WL 1116403, at *6 (E.D.N.Y. Mar. 30, 2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).

"Defense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *Boria v. Keane*, 99 F.3d 492, 498 (2d Cir. 1996)). To demonstrate ineffective assistance of counsel in this context, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceeding." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998)). *See Raysor v. United States*, 47 F.3d 491, 495 (2d Cir. 2011) ("To show the requisite prejudice in the instant case, appellant must demonstrate a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial."); *Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009) ("With respect to a claim that counsel's ineffective assistance led to the rejection of a plea offer that, properly informed, would have been accepted, a petitioner seeking a hearing must proffer arguably credible evidence of a *prima facie* case that, but for counsel's improper advice, the

petitioner would have accepted the plea offer."); *Pham*, 317 F.3d at 182 (holding that a petitioner must present some evidence that he would have accepted the plea if advised of the government's offer).

Second Circuit precedent "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham*, 317 F.3d at 182 (citing *Gordon*, 156 F.3d at 380-81). "Prima facie evidence consists of (i) a sworn statement, in the defendant's own words, expressing his intention to have accepted the plea, and (ii), 'in order for the statement to be sufficiently credible to justify a full hearing, . . . some 'objective evidence,' such as a significant sentencing disparity' between the sentence offered in the rejected plea and the actual sentence imposed." *Williams*, 2012 WL 1116403, at *6 (quoting *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011)).

In support of his first claim, that petitioner merely states that his attorneys failed to review the sentencing guidelines and advise him of the benefit of pleading guilty. He does not assert that he would have pled guilty under particular circumstances. Moreover, the record shows that petitioner had no intention of pleading guilty based on the guidelines. By his own admission in his moving papers, petitioner believed that he would testify and that his attorneys would present multiple defenses *prior* to the empanelment of a jury. Mem. in Supp. at p. 29. He also claimed that had he known that he would be unable to testify or present defenses prior to trial, he "would have had no choice but to plead guilty." *Id.* Thus, the objective evidence shows that despite petitioner's misconception regarding trail procedure, he would not have pled guilty prior to giving testimony and presenting his defenses. Consequently, he was not prejudiced by his attorney's alleged failure to review the guideline sentences and instruct him on pleading guilty.

Furthermore, petitioner has steadfastly maintained his innocence. His moving papers include his affidavit detailing his businesses, the purported source of and explanation for his income. Thus, assuming for the sake of argument that his attorneys did not advise him of the guideline sentence, petitioner was not prejudiced by the alleged omission because there is no evidence that petitioner intended to plead guilty based on the sentencing guidelines.

For the same reasons, petitioner's unsubstantiated claim that he was not advised of his right to plead guilty in open court also fails as do his other grounds concerning a *potential* plea of guilty but for ineffective assistance of counsel.

With regard to petitioner's claims regarding plea bargaining, the government never offered any type of plea deals to petitioner and thus, there were no offers to be passed along by his attorneys. DE 72 at p. 12. Moreover, nothing in the record demonstrates that petitioner would have accepted a plea deal and petitioner does not assert that he would have. Consequently, petitioner's claim fails both prongs of the *Strickland* test, i.e., his attorney's conduct was objectively reasonable because there was nothing for him to discuss with his client concerning a plea deal and, therefore, petitioner did not suffer any prejudice during the alleged plea process.

With respect to petitioner's fourth ground alleging that his attorneys failed to advise him to enter a plea because they failed to provide the government with reciprocal discovery, his attorneys were only obligated to provide discovery related to their case-in-chief under Federal

Rule of Criminal Procedure 16(b)(1)(A).[6]  Petitioner does not identify what items his attorneys failed to disclose or their relevance to his case-in-chief.  For that reason alone, this claim is dismissed because wholly unsubstantiated assertions do not raise questions about counsel's conduct.

Moreover, this Court has previously held that defense counsel's decision to put on a "reasonable doubt case" was good, not bad, lawyering because it prevented the government from bringing in evidence which would have devastated defendant's case.  M & O dated Jan. 18, 2000 at pp. 4-5.  Therefore, petitioner's attorneys were objectively reasonable in not advising petitioner to plead guilty based on their FRCP 16 disclosures, or lack thereof, to the government.

### 4.     Ineffective Assistance of Counsel During Trial

Petitioner first contends that attorney Fisher rendered ineffective assistance of counsel during his criminal trial by deciding to present a "reasonable doubt defense" instead of using attorney Canton's and petitioner's theory that petitioner was not the "Big Boss."  Mem. in Supp. at p. 36. As his second ground, petitioner claims that attorney Canton also prepared a "money defense case," to be presented simultaneously with the Big Boss theory, which was not used either.  The money defense was intended to complement the Big Boss theory by demonstrating that petitioner's wealth derived from lawful sources.  *Id.* at p. 39.  For a third ground, petitioner contends that his attorneys' failures to carry out the defense strategies resulted in myriad constitutional violations based on ineffective assistance of counsel during the trial phase of this

---

6.  The rule provides that if a defendant requests disclosure from the government and the government complies, then the defendant must permit the government to inspect and copy items in the defendant's possession, custody and control if defendant intends to use the item during defendant's case-in-chief at trial.

case. *Id.* at p. 42.

When considering whether counsel's performance fell below an objective standard of reasonableness, a court must consider the "wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996).

As previously noted, the undersigned has held that counsel's strategy to put on a "reasonable doubt" case was sound lawyering, particularly considering the evidence that the jury did not hear, including the content of the Costa Rican tapes of petitioner on the telephone conversing with individuals who had been convicted of trying to establish a cocaine laboratory in Costa Rica; the charges pending against petitioner in Columbia at the time of trial; and petitioner's arrest in 1982 in connection with hundreds of kilograms of cocaine concealed in a boat in a Panamanian harbor. Government witness testimony regarding these substantiated facts would have devastated petitioner's case had his attorneys used the defenses set forth above. Thus, petitioner's counsel's strategic decision to raise a reasonable doubt as to his guilt was not objectively unreasonable in light of the facts which would have been told to the jury if counsel implemented the avenue of defense outlined above. Consequently, these three grounds seeking habeas relief are dismissed because counsels' conduct was objectively reasonable.

As a fourth ground, petitioner contends that counsel was ineffective for consenting to a joint trial of separate indictments in his case and the case entitled *United States v. Augustin Novellas*, et al., 95-CR-721.

Federal Rule of Criminal Procedure 13 provides that the "court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." "[T]he decision to order two indictments tried together is one to be made in the district court's discretion." *United States v. Halper*, 590 F.2d 422, 428 (2d Cir. 1978). Where the indictments sought to be joined arise out of the same series of transactions or from a common plan or scheme, the indictments are properly joined. *See United States v. Gambino*, 809 F. Supp. 1061, 1075 (S.D.N.Y. 1992).

Petitioner argues that there was a "structural error" in this case because his indictment was null and void as discussed above. Thus, according to petitioner, joining two indictments where one indictment is void violates Federal Rule of Criminal Procedure 13. As also set forth above, however, the indictment against petitioner is valid. Therefore, there is no violation of Rule 13. Moreover, as the government points out, any purported error was cured by the fact that petitioner was tried alone. Consequently, he does not state an ineffective assistance claim on either the facts or the law.

As his fifth ground claiming ineffective assistance of counsel during trial, petitioner contends that the two joined indictments became one indictment and, as a result, the now-single indictment became the basis of his extradition from Venezuela. Because the single indictment was not the indictment naming petitioner and supporting the extradition, the Court did not have personal jurisdiction over him. Mem. in Supp. at p. 45. For the reasons stated above demonstrating that petitioner's indictment was valid, this claim is similarly incorrect on the law and the facts and is therefore also dismissed.

For his sixth ground, petitioner contends that counsel was ineffective for failing to inform the Court that he was legally incompetent. *Id.* at 46. In support, petitioner offers approximately two pages testimony from a post-trial proceeding dated September 9, 1999. According to the pertinent section, attorney Canton advised the Court that he did not know whether petitioner was "incompetent" but that he "was very upset" and depressed during his trial. *Id.* The Court responded: "[m]ost defendants are upset during the period of their trial." *Id.*

The sparse testimony offered by petitioner in support of his claim that his attorneys failed to advise the Court that he was legally incompetent merely demonstrates that petitioner was upset and depressed over the state of his affairs. Depression or the like, however, has no relation to legal incompetence. *See Bisnett v. Kelly*, 221 F. Supp. 2d 373, 385 (E.D.N.Y. 2002) ("A defendant is legally incompetent if 'he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.' ") (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). With respect to his case, petitioner has repeatedly stated that he assisted in preparing the Big Boss and alternative monetary resource defense theories which demonstrates that he understood the charges against him and the need for a defense. Furthermore, petitioner prepared and attached to the instant motion an extensive affidavit detailing the alleged alternative revenue sources. Mem. in Supp. at Exh. D. Given the foregoing, counsel's conduct was objectively reasonable in not presenting a legal incompetence defense and petitioner's ineffective assistance claim on this ground is dismissed.

Petitioner also alleges ineffective assistance of counsel on the basis that his attorneys failed to protect his right to be present at all critical stages of the prosecution. Specifically, petitioner contends that the record shows that he was not present when the Court responded to

questions from the jury (Court exhibits 18 and 20). *Id.* at p. 48.

In the first instance, it has *always* been the practice of this Court to ensure a criminal defendant's presence in the courtroom at all stages of any trial, including the reading of notes from a jury. Secondly, as the government points out, this issue was raised in petitioner's appeal to the Second Circuit which issued a summary order affirming the Court and its responses to the jury's notes. Therefore, petitioner's seventh claim alleging ineffective assistance on the ground that counsel did not ensure his presence when the jury's notes were read is dismissed.

As his last ground alleging ineffective assistance during the trial phase of his case, petitioner alleges that counsel's failure to move for dismissal of both conspiracy counts prior to trial was compounded when the Court gave the jury a *Pinkerton* instruction.[7] *Id.* at p. 53. As discussed above, however, the Judgment in petitioner's case reflects that count three, i.e., conspiracy to distribute and possess with intent to distribute cocaine, was dismissed on motion of the government. Accordingly, petitioner was not prejudiced by the *Pinkerton* charge because the count containing the relevant conspiracy charge was dismissed as a matter of law. Counsel's conduct was not, therefore, objectively unreasonable because this issue was raised and disposed of in petitioner's favor.

### 5. Ineffective Assistance of Counsel During Post-Trial Proceedings

First, petitioner claims that the Court committed a *per se* reversible error by failing to

---

7. *See United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) ("Under *Pinkerton v. United States*, 328 U.S. 640 (1946), 'a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the offense by a co-conspirator in furtherance of the conspiracy was reasonably foreseeable to the defendant as a consequence of their criminal agreement.' ") (quoting *Cephas v. Nash*, 328 F.3d 98, 101 n.3 (2d Cir. 2003)) (internal citation omitted).

conduct a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) to inquire into a possible conflict between petitioner and counsel.  Mem. in Supp. at pp. 54-55.  Petitioner contends that post-trial counsel was ineffective for failing to raise this issue as a ground for a new trial.

As the government points out, however, petitioner's trial was concluded and the jury had been charged and begun deliberations when petitioner raised his hand in the courtroom and asked to testify.  At that time, the Court asked the government for its position on petitioner's request to testify after the jury had been charged, which request was opposed by the government.  The Court then permitted the jury to begin deliberations and petitioner did not testify.  Given the posture of petitioner's case, there was nothing petitioner's counsel could have done because the case was already in the jury's hands.  Consequently, his attorneys were not ineffective for demanding a new trial on these grounds because petitioner's trial had concluded and the case had been given to the jury which was procedurally proper.

Second, petitioner claims that his post-trial attorneys, Messrs. Bondy and Schmulker, were ineffective for failing to notify the Court that they were operating under a conflict.  *Id.* at p. 56.  According to petitioner, attorney Canton along with attorney Fisher retained Mr. Bondy so he could raise the ineffective assistance claims against Messrs. Canton and Fisher.  As a result, petitioner argues, Messrs. Bondy and Schmulker had conflicting interests with him and rendered ineffective assistance because they could not mount an attack against their employers, i.e., petitioner's trial attorneys Canton and Fisher.  *Id.*

As set forth above, however, the Second Circuit appointed attorney Bondy on October 12,

2001 pursuant to the Criminal Justice Act to represent petitioner on appeal. Approximately two months later, Mr. Bondy filed a direct appeal on behalf of petitioner. Among other things, the appeal renewed his ineffective assistance of counsel claim *against* attorney Fisher, which claim was initially raised before the undersigned. This Court's rulings were subsequently affirmed by summary order. On August 15, 2002, Mr. Bondy filed a writ of certiorari to the United States Supreme Court, which was denied on October 7, 2002. Given these facts, petitioner's claim that Messrs. Bondy and Schmukler rendered ineffective assistance of counsel because their interests conflicted with petitioner's is dismissed.

Third, petitioner alleges that post-trial counsel was ineffective for failing to file a motion for a new trial based on *Richardson v. United States*, 526 U.S. 813 (1999). Mem. in Supp. at p. 57. He argues that the case's holding requiring jury unanimity with respect to each individual violation of the continuing criminal enterprise charge entitles him to a new trial. He contends that where the record reflects that the *Pinkerton* theory of liability jury instruction resulted in the guilty verdicts on the substantive counts, there is a reasonable probability he would have been granted a new trial under the holding in *Richardson*.

As discussed above, the indictment properly alleged the elements of a CCE. It also alleged four substantive charges related to petitioner's distribution of cocaine and possession with intent to distribute cocaine. The jury found petitioner guilty beyond a reasonable doubt on the CCE charge and the substantive charges. As a result, the jury was unanimous with respect to the individual violations which constituted the CCE charge and its elements. Thus, post-trial counsel was not ineffective for failing to file a motion for a new trial based on *Richardson*.

-30-

Petitioner also argues that the Court improperly allowed the jury to use one of the invalid conspiracy counts as a predicate offense and that the jury verdict cannot be sustained in light of *Richardson*. *Richardson*, however, merely requires jury unanimity on the individual violations of the CCE charge. The jury found petitioner guilty on four of the substantive counts and, in turn, guilty of the elements of the CCE count. The conspiracy count at issue was dismissed, but the four substantive counts, i.e., the criminal enterprise charge's continuing violations, remain intact. Accordingly, *Richardson* has no effect on the jury's consideration of a later dismissed charge because there are ample violations to support *Richardson's* requirement of juror unanimity finding guilt with respect to the continuing violations. Moreover, the Second Circuit, post *Richardson*, upheld petitioner's conviction and sentencing. Post-trial counsel was not, therefore, ineffective for failing to move for a new trial on these grounds.

### 6.      Ineffective Assistance of Counsel at Sentencing

Petitioner first claims that during the sentencing phase of this case, counsel was ineffective for failing to correct this Court's "erroneous interpretation" of the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Mem. in Supp. at p. 59. As was noted above and as the government points out, attorney Bondy filed a direct appeal of petitioner's sentence with the Second Circuit based on *Apprendi*, which appeal was denied by an unpublished summary order. On these facts, this ineffective assistance claim is dismissed.

As his second ground claiming ineffective assistance of counsel at sentencing, petitioner contends that sentencing counsel failed to register specific objections against materially inaccurate and false information in the presentence report ("PSR"). Mem. in Supp. at p. 60. In

support, petitioner cites to a statement made by Mr. Bondy during sentencing wherein he said that petitioner did not testify to information about his companies and that, as a result, he and petitioner were unable to refute every charge in the report. *Id.*

Mr. Bondy's written objections to the PSR contain a general statement noting petitioner's objection to any and all references to his involvement in a narcotics or money laundering conspiracy and that petitioner continued to maintain his innocence.[8] There are also specific objections to specific paragraphs in the PSR as well as an addendum incorporating and responding to the objections, which was prepared by the probation department. Counsel did not, therefore, fail to lodge objections to the PSR and petitioner's ineffectiveness claim on this ground is dismissed.

For his third, fourth and fifth ground alleging ineffective assistance of counsel during sentencing, petitioner claims various errors related to sentencing made by the Court which counsel failed to point out, to wit: (1) that the Court was mistaken as to its ability to grant a downward departure; (2) that the Court misapplied the sentencing guidelines; and (3) that the Court's sentence was illegal, erroneous and ambiguous. Mem. in Supp. at pp. 61-68.

As aforesaid, petitioner's sentence was affirmed by the Second Circuit and the Supreme Court denied certiorari in his case. Thus, if counsel committed any errors during the sentencing phase of this case, they were harmless or the Second Circuit would not have affirmed by an unpublished summary order and the Supreme Court would not have denied certiorari. Accordingly, none of these three grounds amount to ineffective assistance of counsel and are

---

8. Petitioner's PSR folder containing Mr. Bondy's objections is maintained in the undersigned's Chambers.

dismissed.

As a sixth ground alleging ineffective assistance during the sentencing phase, petitioner contends that counsel was ineffective for failing to advise the Court that his sentence violated the prohibition against double jeopardy. *Id.* at p. 69. He argues that the conspiracy charged in count two is a lesser included conspiracy offense and barred by double jeopardy at sentencing when a defendant is also found guilty on a CCE charge. *Id.*

As stated above, count three was dismissed on the government's motion because conspiracy to distribute a controlled substance is a lesser included offense of engaging in a CCE pursuant to *United States v. Rutledge*, 517 U.S. 292, 301 (1996). Count two, however, involved conspiracy to import cocaine into the United States and is not a lesser included charge of engaging in a CCE. Accordingly, counsel was not ineffective for failing to bring the above to the attention of the Court because no double jeopardy concerns were implicated.

Petitioner's seventh and final claim regarding ineffective assistance of counsel during the sentencing portion of his case is that counsel failed to alert the Court that the jury instruction concerning the *Pinkerton* theory of liability tainted the guilty verdicts on all of the substantive counts. Mem. in Supp. at p. 69. He argues that he was sentenced illegally on all eight counts in the indictment, which necessarily includes the conspiracy counts. *Id.*

As stated elsewhere, the Judgment in this case reflects that count three, conspiracy to distribute and possess with intent to distribute cocaine, was dismissed on motion of the government. As a matter of course, petitioner was not sentenced based on count three because it was dismissed as a lesser included offense. Subsequently, the sentence as pronounced was

upheld by the Second Circuit and Supreme Courts. Counsel was not, therefore, objectively unreasonable in not alerting the Court based on petitioner's faulty reading of the law.

**7.     Ineffective Assistance of Counsel on Appeal**

Petitioner contends that attorney Bondy, who represented him on appeal, failed to raise important issues before the appellate court and that Mr. Bondy labored under a conflict of interest which rendered the appellate process a nullity. Mem. in Supp. at p. 70.

First, petitioner argues that counsel should have complained about this Court's decision to recuse itself for the post-trial evidentiary hearing on whether attorney Fisher rendered ineffective counsel by preventing petitioner from testifying at trial. As discussed above, Judge Wexler conducted that hearing and held that petitioner did not prove his claim. The case was then returned to the undersigned. *Id.*

Pursuant to 28 U.S.C. § 455(a), any "justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Furthermore, "[d]etermination of that inquiry is committed to the sound discretion of the judge whose disqualification is sought." *Riola v. Long Island Cycle & Marine, Inc.*, 352 F. Supp. 2d 365, 366 (E.D.N.Y. 2005) (citing *United States v. Oluwafemi*, 883 F. Supp. 885, 890 (E.D.N.Y. 1995)).

As held in this Court's Order dated January 18, 2000, "[i]n an excess of caution, this Court granted defendant's motion that the Court recuse himself (because he complimented Mr. Fisher on one or more occasions during the trial regarding his performance) and give the defendant a hearing before another Judge on the issue of whether Mr. Fisher impermissibly

-34-

"forbade, denied or otherwise prevented" defendant from testifying at his trial." Thus, the undersigned partially recused himself *on defendant's motion* and to avoid any appearance of impartiality on the issue of whether attorney Fisher rendered ineffective assistance with respect to the petitioner testifying. This Order was before the Second Circuit during petitioner's direct appeal. As has been repeatedly noted, the Second Circuit affirmed all of the proceedings in the district court by summary order. Accordingly, petitioner has not shown that appellate counsel was ineffective for not raising this issue or that he was prejudiced by his attorney's conduct because the Second Circuit was aware of and affirmed it.

Petitioner also alleges that counsel was remiss for not advising the Court of Appeals that attorney Zapp was retained despite a conflict and that attorneys Fisher and Canton were also conflicted. Mem. in Supp. at p. 70. With regard to attorney Zapp and as has also been discussed, he never appeared as petitioner's attorney in this case and his role was basically non-existent according to the docket in petitioner's criminal case. With regard to attorneys Fisher's and Canton's purported conflicts, appellate counsel Bondy expressly raised the purported conflicts on direct appeal to the Second Circuit which found no errors. Accordingly, petitioner's claim alleging ineffective assistance of appellate counsel is dismissed.

### 8. Prejudice Caused by the Cumulative Impact of Counsel's Multiple Deficiencies

Petitioner alleges that based on the record, including the pretrial, trial, post-trial, sentencing and appeal proceedings, counsels' errors caused a complete breakdown in the adversarial process. *Id.* at p. 71. He argues that absent these deficiencies, the outcome of his case would have been different. *Id.*

The petition in this case sets forth no less than forty grounds of relief, the merits of which were all discussed separately herein. Having found that petitioner has failed to raise an issue of law or fact with regard to those grounds, the Court also finds that petitioner suffered no cumulative impact.

### 9.       Petitioner's Request for an Evidentiary Hearing

Petitioner claims that he is entitled to an evidentiary hearing because more than one inference can be raised as to counsels' actions. *Id.* at 72. For the same reasons that the Court finds that petitioner has not shown a cumulative prejudicial impact stemming from counsels' alleged ineffective assistance, it also finds petitioner is not entitled to a hearing. Simply put, petitioner has not raised any issues requiring such a hearing. Thus, the request is denied.

### 10.       Petitioner's Presentence Investigation Report

As the final portion of his habeas petition, petitioner request that he be permitted to raise additional grounds after obtaining a copy of the presentence report ("PSR") prepared by probation. He argues that the Bureau of Prisons ("BOP") has implemented a policy which prohibits him from possessing his PSR thereby frustrating his ability to raise additional fundamental constitutional challenges to his conviction and sentence. *Id.*

"Prisoners are ordinarily required to exhaust the administrative remedies set forth in the BOP's grievance procedure regulations, 28 C.F.R. §§ 542.10-16, prior to filing an action against the BOP." *Sanders v. Menifee*, No. 04 Civ. 1483, 2004 WL 1562734, at *4 n.2 (S.D.N.Y. July 13, 2004) (citing *United States v. Arthur*, 367 F.3d 119, 123 (2d Cir. 2004)). Petitioner has not demonstrated that he exhausted his administrative remedies with regard to the BOP's policies on

inmates possessing their PSR.  Nor has he offered a valid reason why the Court should depart from this rule.  Accordingly, petitioner's request is denied.

**C.      Petitioner's Request for a Default or Summary Judgment**

Petitioner contends that he is entitled to a default or summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 55(d) because the government defaulted by failing to respond to the allegations raised in his habeas petition in conformance with this Court's Order dated November 14, 2003.

Pursuant to FRCP 55(d), a "default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."  He argues that the government requested numerous continuances and failed to respond within the time period set in the Court's Order dated November 14, 2003.  The government responds that it obtained the extensions of time because it had to review, investigate and address petitioner's claims.  This required the government to review the voluminous record in this case, including court files, transcripts, court decisions and to communicate with defense counsel.

In light of the government's stated reasons, petitioner has not established a right to relief to the Court's satisfaction.  It also notes that petitioner made numerous requests for extensions from February 12, 2007 through June 21, 2011, all of which were granted.  Moreover, petitioner was not prejudiced by the delay because his instant petition was denied in its entirety.  Accordingly, his request for a default judgment is denied.

Petitioner also moves for summary judgment on his habeas petition pursuant to FRCP 56(a).  Pursuant to FRCP 56(a), a party may move for and a court shall grant summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As explained in detail above, petitioner has not demonstrated that he is entitled to judgment as a matter of law or fact. For that reason, his motion for summary judgment is also denied.

### III.  CONCLUSION

For the foregoing reasons, petitioner's habeas corpus petition brought pursuant to 28 U.S.C. § 2255 is hereby **DENIED** in its entirety. Petitioner's request for a default or summary judgment is also **DENIED**. Petitioner's request for an evidentiary hearing is hereby **DENIED**. **SO ORDERED**.

Dated:  September 25, 2012
        Central Islip, New York

_____/s/_____
Thomas C. Platt, U.S.D.J.